# EXHIBIT A

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 2 of 44 PageID #: 5

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

| | |
|---|---|
| Mateusz Nowak, | Index No.: |
| | Date Purchased: |
| Plaintiff, | **SUMMONS** |
| v. | **Basis of Venue:** |
| Citibank, N.A., Discover Bank, Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union, LLC, | **CPLR §509:** Venue designated by Plaintiff. **CPLR §503(a):** Plaintiff's principal place of residence |
| Defendants. | |

**TO THE ABOVE-NAMED DEFENDANT(S):**

      **YOU ARE HEREBY SUMMONED**, to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on Plaintiff's Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York).

      **YOU ARE HEREBY NOTIFIED THAT**, should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: Uniondale, New York
      February 27, 2024

**Defendants Addresses:**

Citibank, N.A
701 East 60th Street North
Sioux Falls, South Dakota 57104

Discover Bank
502 E. Market Street
Greenwood Delaware 19950
Registered Agent:
28 Liberty Street
New York, NY 10005

**SANDERS LAW GROUP**

By: */s/ Nicola C. Richards*
Nicola C. Richards, Esq.
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: nrichards@sanderslaw.group
Office: (516) 203-7600
Direct: (516) 203-7614
Fax: (516) 282-7878
*Attorneys for Plaintiff*
Our File No.: 129435

1

Equifax Information Services, LLC
1550 Peachtree Street
NW Atlanta, GA 30309
Registered Agent:
The Corporation Service Company
80 State Street, Albany, NY 12207

Experian Information Solutions, Inc.
475 Anton Blvd.
Costa Mesa, CA 92626
Registered Agent:
CT Corporation System
28 Liberty Street, New York, NY 10005

Trans Union LLC
555 W. Adams Street
Chicago, IL 60661
Registered Agent:
The Prentice-Hall Corporation System, Inc.
80 State Street, Albany NY 12207

2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

| | |
|---|---|
| Mateusz Nowak, | |
| Plaintiff, | Index No: |
| v. | **COMPLAINT** |
| Citibank, N.A, Discover Bank, Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union, LLC, | |
| Defendants. | |

Plaintiff Mateusz Nowak ("*Plaintiff*"), by and through the undersigned counsel, complains, states and alleges against Citibank N.A., ("*Citibank*"), Discover Bank ("*Discover*") (Discover and Citibank may be collectively referred to as "*Furnisher Defendants*"), Equifax Information Services, LLC ("*Equifax*"), Experian Information Solutions, Inc. ("*Experian*") and Trans Union, LLC ("*Trans Union*") (Experian, Equifax and Trans Union may be hereinafter collectively referred to as "*CRA Defendants*") (Furnisher Defendants and CRA Defendants may be hereinafter collectively referred to as "*Defendants*") as follows:

**INTRODUCTION**

1.      This action seeks to recover for violations of the Fair Credit Reporting Act (the "*FCRA*"), 15 U.S.C. § 1681 *et seq.* and the New York Fair Credit Reporting Act, NY CLS General Business Law Section § 380 *et seq. ("NY FCRA")*.

2.      This action seeks relief against CRA Defendants for reporting inaccurate and/or misleading information on Plaintiff's credit report in violation of § 1681e(b); and for CRA Defendants' failure to conduct a reasonable investigation into Plaintiff's disputes in violation of § 1681i(a).

3.      This action also seeks relief against CRA Defendants pursuant to NY FCRA § 380-F for failing to comply with the proper procedures for resolving disputes after a consumer disputes an item and failing to promptly remove inaccurate and/or misleading information.

3

Case 1:24-cv-02769   Document 1-1   Filed 04/12/24   Page 5 of 44 PageID #: 8

4.      This action seeks relief against Furnisher Defendants for violations of the Fair Credit Reporting Act under 15 U.S.C. § 1681s-2(b), for its failure to conduct a reasonable and/or good faith investigation into Plaintiff's notice of disputes and failing to delete, correct or block the inaccurate information.

5.      Plaintiff seeks an Order enjoining Defendants' injurious conduct and to recover *inter alia*, statutory damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and expenses for injuries suffered as a result of Defendants' erroneous reporting of inaccurate information in Plaintiff's consumer background reports.

6.      As a result of Defendants' conduct in misreporting and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiff has sustained actual damages including, but not limited to: a decreased credit score; decreased credit worthiness and credit capacity; emotional and mental pain due to the anxiety and stress of the negative credit impact of the errors at issue despite taking steps to resolve it; the dissemination of this inaccurate reporting to third party prospective creditors.

7.      Plaintiff seeks to recover monetary damages for Defendants' violations of the FCRA and to have an Order issued by this Court enjoining Defendants from persisting in their violative behaviors.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the action pursuant to §§ 301 and 302 of the New York Civil Practice Law and Rules ("*CPLR*") in that Defendants conduct business in the State of New York and have purposely availed themselves of the privilege of conducting business in the State of New York.

9.      Venue is appropriate in Suffolk County pursuant to CPLR § 503(a) because Plaintiff resides within such County and a substantial part of the events and omissions giving rise to Plaintiff's claim occurred within the Court's jurisdiction.

## PARTIES

10.     Plaintiff Mateusz Nowak is an adult who is a citizen of the State of New York residing in Suffolk County, New York.

11.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and NY FCRA § 380-a(b).

4

Case 1:24-cv-02769   Document 1-1   Filed 04/12/24   Page 6 of 44 PageID #: 9

12.     Defendant Citibank is a national banking association located in South Dakota and has a principal place of business located at 701 East 60th Street North, Sioux Falls, South Dakota 57104.

13.     Defendant Citibank is a "furnisher of information" (hereinafter "*Furnisher*") as that term is defined by 15 U.S.C. § 1681s-2(b).

14.     Defendant Discover is a bank located in Delaware and has a principal place of business located at 502 E. Market Street, Greenwood Delaware 19950.

15.     Defendant Discover is a "furnisher of information" (hereinafter "*Furnisher*") as that term is defined by 15 U.S.C. § 1681s-2(b).

16.     Defendant Equifax is a Georgia limited liability company which has a principal place of business located at 1550 Peachtree Street, NW, Atlanta, GA 30309.

17.     Defendant Equifax Information Services, LLC, is a subsidiary of Equifax, Inc. and qualifies as a consumer reporting agency (hereinafter "*CRA*"), as defined under 15 U.S.C. § 1681a(f) and NY FCRA § 380-A(e), that regularly conducts business in this judicial district.

18.     Defendant Equifax by contractual agreement, disseminates consumer background reports for remuneration to third parties.

19.     Defendant Experian is an Ohio corporation which has a principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626.

20.     Defendant Experian is a CRA as defined under 15 U.S.C. § 1681a(f) and NY FCRA § 380-A(e), that regularly conducts business in this judicial district.

21.     Defendant Experian by contractual agreement, disseminates consumer background reports for remuneration to third parties.

22.     Defendant Trans Union is an Illinois limited liability company which has a principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

23.     Defendant Trans Union is a CRA as defined under 15 U.S.C. 1681a(f) and NY FCRA § 380-A(e), that regularly conducts business in this judicial district.

24.     Defendant Trans Union by contractual agreement, disseminates consumer background reports for remuneration to third parties.

5

## SUBSTANTIVE ALLEGATIONS OF FCRA

25.    Congress enacted § 1681 *et seq.* of Title 15 of the United States Code, § 1681(a) of which states as follows:

(1)    The banking system is dependent upon fair ***and accurate*** credit reporting. ***Inaccurate credit reports directly impair the efficiency of the banking system***, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2)    An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3)    Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4)    There is a ***need to insure that consumer reporting agencies exercise their grave responsibilities with fairness***, impartiality, and a respect for the consumer's right to privacy.

(Emphases added).

26.    FCRA mandates that CRAs adhere to the following duties: (i) to assure maximum possible accuracy of information when preparing consumer reports and to set up reasonable policies procedures to maintain compliance with this minimum reporting standard; and (ii) to reinvestigate the facts and circumstances surrounding a dispute by consumers and to appropriately and timely correct any inaccuracies, including by quickly notifying the furnisher and any other parties in the distribution chain of the disputed inaccuracies.

27.    CRAs compile, maintain, and report information concerning the creditworthiness, credit-standing, credit capacity, character, and general reputation of consumers, including Plaintiff. That information is then made available for use by third parties in credit transactions involving consumers, for employment purposes, for the underwriting of insurance for consumers, and even housing.

28.    Plaintiff has a legally protected interest in the Defendants fulfilling their duties under the FCRA so that the credit information being furnished and reported by them is maintained fairly, with the maximum levels of confidentiality, accuracy, and relevancy.

29.    Plaintiff's injury is particularized and actual and is directly traceable to Defendants' conduct. The deprivation of Plaintiff's rights will be redressed by a favorable decision herein.

6

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 8 of 44 PageID #: 11

## FACTUAL ALLEGATIONS

### Discover and CRA Defendants

30.     Plaintiff Mateusz Nowak had an outstanding charged off debt with Discover in the amount of $3,149 (the "*Discover Account*").

31.     Plaintiff settled this debt with Discover in full for the sum of $944.

32.     This settlement resolved the debt in its entirety and nothing more was or is due and owing.

33.     As such, Plaintiff's credit reports should reflect that the debt was settled or paid off for less than the amount owed.

34.     After the settlement was completed, Plaintiff caused a dispute letter to be sent to CRA Defendants via certified mail (the "*FCRA Dispute Letter*").

35.     Based upon United States Postal Service tracking information, Equifax received the FCRA Dispute Letter on December 5, 2023.

36.     Based upon United States Postal Service tracking information, Experian received the FCRA Dispute Letter on December 7, 2023.

37.     Based upon United States Postal Service tracking information, Trans Union received the FCRA Dispute Letter on December 4, 2023.

38.     Upon information and belief, CRA Defendants forwarded a notice of dispute and all relevant information regarding the FCRA Dispute Letter to Discover, within five business days of receipt of same, as required by the FCRA.

39.     Upon information and belief, Discover received the notice of dispute and all relevant information from CRA Defendants of Plaintiff's FCRA Dispute Letter.

40.     Following the thirty (30) day FCRA investigation period for Discover and CRA Defendants, they continued to report the debt as unpaid with an outstanding balance and past due amount of $2,204.

41.     Following the thirty (30) day FCRA investigation period, Equifax, Trans Union and Discover continued to report the Discover Account as charged off as of December 2023, despite Plaintiff's November 2023 settlement payment.

42.     Since this debt was settled and paid off entirely, the reporting of an outstanding balance and the failure to indicate that the debt was settled is inaccurate, misleadingly inflates Plaintiff's liabilities and violates the FCRA.

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 9 of 44 PageID #: 12

43. Upon information and belief, Discover and CRA Defendants either failed to perform any investigation at all or performed an unreasonable investigation and erroneously verified the inaccurate Discover Account as accurate.

44. Had Discover and CRA Defendants performed a reasonable investigation, the Discover Account at issue would have been modified to reflect the fact that it was settled with no outstanding balance, or the tradeline would have been deleted entirely.

45. Alternatively, and upon information and belief, CRA Defendants failed to provide Discover with the notice of dispute and all relevant information.

46. Alternatively, and upon information and belief, Discover provided CRA Defendants with the correct information and directives regarding the Discover Account and CRA Defendants failed to properly process or furnish this data to Plaintiff's credit report.

47. As such, CRA Defendants failed to practice reasonable procedures to assure maximum possible accuracy.

48. As a result of Discover and CRA Defendants' conduct in misreporting and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiff has sustained actual damages including, but not limited to: a decreased credit score; decreased credit worthiness and credit capacity; wrongly inflated liabilities; emotional and mental pain due to the anxiety and stress of the negative credit impact of the errors at issue despite taking steps to resolve it; lost time and effort; the dissemination of this inaccurate reporting to third party prospective creditors.

**Citibank and CRA Defendants**

49. Plaintiff has three Citibank Accounts on his consumer credit report with CRA Defendants reporting an inaccurate balance (the "Citibank Accounts"). All three accounts appear on Plaintiff report as follows:

    a. Citibank Account No: XXXX7147 (Account 7147)

    b. Citibank Account No: XXXX2545 (Account 2545)

    c. Citibank Account No: XXXX9630 (Account 9630)

50. On or around April 2022, Citibank voluntarily cancelled and forgave the entire debt for each of the three Citibank Accounts.

51. The cancellation of the debts were conveyed in at least one phone call made to Citibank where they confirmed that the outstanding debts were discharged and cancelled.

8

52.     On or around March 2023, Citibank further memorialized the cancellation of the outstanding balances by issuing a 1099-C to Plaintiff for the Citibank Accounts.

53.     A copy of the 1099-C for Account 7147 is annexed hereto as **Exhibit A.**

54.     A copy of the 1099-C for Account 2545 is annexed hereto as **Exhibit B.**

55.     A copy of the 1099-C for Account 9630 is annexed hereto as **Exhibit C.**

56.     Each 1099-C Plaintiff received lists the identifiable event code "G".

57.     Pursuant to the Internal Revenue Service's (IRS") instructions for Form 1099-C (https://www.irs.gov/pub/irs-pdf/i1099ac.pdf), identifiable event codes are used to report the nature of the discharge.

58.     The instructions on the Identifiable event code "G" are defined as "A discharge of indebtedness because of a decision or a defined policy of the creditor to discontinue collection activity and cancel the debt. A creditor's defined policy can be in writing or an established business practice of the creditor. A creditor's established practice to stop collection activity and abandon a debt when a particular nonpayment period expires is a defined policy."

59.     Upon information and belief Citibank voluntarily disposed of their right to collect that amounts on the Citibank Accounts when they chose to forgive the balance of the debts owed by Plaintiff.

60.     Upon information and belief, Citibank obtained a tax benefit for issuing the 1099-C.

61.     Despite the cancellation of debts and the corresponding 1099-C, Citibank continued to report the cancelled debt as a charged off account with an outstanding balance.

62.     To update the inaccuracy, Plaintiff caused a dispute letter to be sent via certified mail to CRA Defendants informing them of this issue (the "*FCRA Dispute Letter*").

63.     The FCRA Dispute Letter enclosed Plaintiff's 1099-C showing the dates the debts were discharged along with the Plaintiff's driver's license, tax documents, credit card bill as proof of identity and address.

64.     Based upon United States Postal Service tracking information, CRA Defendants received the FCRA Dispute Letter.

65.     Upon information and belief, CRA Defendants forwarded a notice of dispute and all relevant information regarding the FCRA Dispute Letter to Citibank, within five business days of receipt of same.

9

66.     Upon information and belief, Citibank received the notice of dispute and all relevant information from CRA Defendants.

67.     Following the thirty (30) day FCRA investigation period, Experian continued to inaccurately report the Citibank Accounts as charged off between April 2022 through to January 2024.

68.     Following the thirty (30) day FCRA investigation period, Equifax continued to inaccurately report Account 2545 as charged off between February 2023 till December 2023.

69.     Following the thirty (30) day FCRA investigation period, Trans Union continued to inaccurately report Account 9630 as charged off between April 2022 till March 2023.

70.     Upon information and belief, Citibank and CRA Defendants either failed to perform any investigation at all or performed an unreasonable investigation and erroneously verified the inaccurate account as accurate.

71.     Had Defendants performed a reasonable investigation, the accounts at issue would have been modified to reflect the Citibank Accounts as closed or the tradeline would have been deleted entirely.

72.     Alternatively, and, upon information and belief, CRA Defendants failed to provide Citibank with the notice of dispute and all relevant information.

73.     Alternatively, and, upon information and belief, Citibank provided CRA Defendants with the correct information and directives regarding the Citibank Accounts and CRA Defendants failed to properly process or furnish this data to Plaintiff's credit report.

74.     As such, CRA Defendants failed to practice reasonable procedures to assure maximum possible accuracy.

75.     As a result of Citibank and CRA Defendants' conduct in misreporting and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiff has sustained actual damages including, but not limited to: a decreased credit score; decreased credit worthiness and credit capacity; wrongly inflated liabilities; emotional and mental pain due to the anxiety and stress of the negative credit impact of the errors at issue despite taking steps to resolve it; lost time and effort; the dissemination of this inaccurate reporting to third party prospective creditors.

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 12 of 44 PageID #: 15

## FIRST COUNT
### CRA Defendants' Violations of the FCRA, 15 U.S.C. § 1681e(b).

76.     Plaintiff repeats and realleges the foregoing paragraphs as if fully restated at length herein below.

77.     CRA Defendants systemically violated 15 U.S.C. § 1681e(b) by failing to adhere to, maintain and/or establish reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

78.     Upon receipt of Plaintiff's disputes, CRA Defendants were legally required to: (i) conduct a reasonable investigation or re-investigation into all the circumstances surrounding the dispute; and (ii) when and if appropriate, remove any inaccurate information following the performance of the reasonable investigation.

79.     Upon information and belief, CRA Defendants' conduct in the instant matter is representative of their normal policies and procedures (or lack thereof) for maintaining accurate credit reporting.

80.     In violation of §§ 1681e(b) and 1681(i), CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy of the information attributable to Plaintiff, by reporting inaccurate information in Plaintiff's consumer background report.

81.     Plaintiff disputed the inaccurate information and CRA Defendants knowingly or intentionally failed to perform a reasonable investigation to remove the inaccurate information.

82.     Plaintiff disputed the inaccurate information and CRA Defendants recklessly failed to perform a reasonable investigation to remove the inaccurate information.

83.     Alternatively, Plaintiff disputed the inaccurate information and CRA Defendants negligently failed to perform a reasonable investigation to remove the inaccurate information.

84.     As a result of CRA Defendants' violations of 15 U.S.C. § 1681, Plaintiff suffered actual damages which have been further described in the above statement of facts.

85.     In violation of § 1681o and § 1681n, CRA Defendants' conduct was a direct and proximate cause of Plaintiff's injury.

86.     CRA Defendants are liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures.

11

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 13 of 44 PageID #: 16

87.     As a result of CRA Defendants' violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual damages and punitive damages, pursuant to 15 U.S.C. §§ 1681n and 1681o.

88.     For the foregoing reasons, CRA Defendants violated 15 U.S.C. § 1681e(b) and are liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n & § 1681o.

## SECOND COUNT
### CRA Defendants' Violations of the FCRA, 15 U.S.C. § 1681i *et seq.*

89.     Plaintiff repeats and realleges the foregoing paragraphs as if same were fully restated herein below.

90.     CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was accurate and record the current status of the disputed information or delete the item from Plaintiff's credit report.

91.     CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by relying upon only a cursory review of basic information and deferring entirely upon Furnisher Defendant and merely parroting information received from the furnisher.

92.     CRA Defendants violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide Furnisher Defendant all of the relevant information regarding Plaintiff and his dispute.

93.     CRA Defendants violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff regarding the dispute.

94.     CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or correct the inaccurate information upon reinvestigation.

95.     CRA Defendants never: (i) contacted Plaintiff to follow up on, verify and/or elicit more specific information about Plaintiff's dispute; (ii) contacted any third parties that would have relevant information concerning Plaintiff's dispute; (iii) forwarded any relevant information concerning Plaintiff's dispute to Furnisher Defendant; or (iv) requested or obtained any other relevant documents from Furnisher Defendant. As such, there is no evidence of a reasonable investigation being conducted.

96.     As a result of CRA Defendants' violations of 15 U.S.C. § 1681, Plaintiff suffered actual damages which have been further described above in the statement of facts.

97.     CRA Defendants' violations were willful because they had knowledge of the issue after receiving a detailed dispute letter and/or exhibited a reckless disregard for the information provided in that dispute, rendering CRA Defendant individually liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

98.     In the alternative, CRA Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

99.     For the foregoing reasons, CRA Defendants violated 15 U.S.C. § 1681i and are liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**THIRD COUNT**
**Furnisher Defendants' Violations of the FCRA, 15 U.S.C. § 1681s-2(b)**

100.     Plaintiff repeats and realleges the foregoing paragraphs as if same were fully restated herein below.

101.     At all times pertinent hereto, Furnisher Defendants are "persons" as that term is defined by 15 U.S.C. § 168la(b) and a "furnisher of information" to the credit reporting agencies.

102.     Furnisher Defendants have a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a credit dispute directly from a consumer. *See* 15 U.S.C. § 1681s-2(a).

103.     Furnisher Defendants have an obligation under 15 U.S.C. § 1681s-2(b) to investigate a dispute after receiving notice of the disputed item from a consumer reporting agency.

104.     FCRA requires furnishers, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

105.     On each occasion referenced in the above statement of facts where a dispute was sent to CRA Defendants, upon information and belief, CRA Defendants provided Furnisher Defendants the notice of dispute and all relevant information regarding the disputes.

13

106.    Upon information and belief, on each occasion referenced in the above statement of facts where a dispute was sent to CRA Defendants, Furnisher Defendants received the notice of dispute and all relevant information regarding the disputes.

107.    Upon information and belief, Furnisher Defendants violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully, reasonably and in good faith investigate Plaintiff's disputes.

108.    Furnisher Defendants failed to correct or remove the inaccurate information from the account and credit report and report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

109.    Upon information and belief, Furnisher Defendants' conduct in the instant matter is representative of their normal policies and procedures in responding to disputes by providing only a cursory review of basic information and failing to investigate any further or failing to investigate and remediate any errors entirely.

110.    Furnisher Defendants violated § 1681s-2(b) by willfully failing to fully, properly and reasonably conduct an investigation of the inaccurate information that Plaintiff disputed.

111.    Furnisher Defendants violated § 1681s-2(b) by willfully failing to review all relevant information concerning Plaintiff's account as provided.

112.    Furnisher Defendants violated § 1681s-2(b) by willfully failing to report the results of its investigation of the inaccurate information to all credit reporting agencies.

113.    Furnisher Defendants violated § 1681s-2(b) by willfully failing to modify or delete incomplete or inaccurate information or information it cannot verify in Plaintiff's file after conducting an investigation.

114.    Furnisher Defendants violated § 1681s-2(b) by willfully failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to credit reporting agencies.

115.    Furnisher Defendants violated § 1681s-2(b) by willfully failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

116.    Furnisher Defendant Discover's conduct was willful in that it had direct knowledge of the settlement agreement, was a party to that settlement, received payment for the settlement, and received FCRA dispute notice of the tradeline from the consumer reporting agencies, but continued to report the tradeline inaccurately.

14

117.    Alternatively, Furnisher Defendant Discover exhibited a reckless disregard and unjustifiably high risk to Plaintiff when it received the FCRA dispute and still failed to conduct a reasonable investigation and correct the credit reporting.

118.    Furnisher Defendant Citibank's conduct was willful in it had direct knowledge that the information it was reporting was inaccurate and/or misleading, and despite receipt of valid FCRA dispute notice from the consumer reporting agencies, continued to report the tradeline inaccurately.

119.    Alternatively, Furnisher Defendant Citibank exhibited a reckless disregard and unjustifiably high risk to Plaintiff when it received the FCRA dispute and failed to conduct a reasonable investigation and failed to correct the credit reporting.

120.    Furnisher Defendants violated § 1681s-2(b) by negligently failing to review all relevant information concerning Plaintiff's account as provided.

121.    Furnisher Defendants violated § 1681s-2(b) by negligently failing to report the results of its investigation of the inaccurate information to all credit reporting agencies.

122.    Furnisher Defendants violated § 1681s-2(b) by negligently failing to modify or delete incomplete or inaccurate information or information it cannot verify in Plaintiff's file after conducting an investigation.

123.    Furnisher Defendants violated § 1681s-2(b) by negligently failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to credit reporting agencies,

124.    Furnisher Defendants violated § 1681s-2(b) by negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

125.    Further, Plaintiff suffered actual damages, further described in the above in statement of facts.

126.    Furnisher Defendants are liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

127.    Alternatively, Furnisher Defendants' conduct was negligent, failing to exercise reasonable care when it failed to conduct a reasonable investigation, thereby entitling Plaintiff to recover under 15 U.S.C. § 1681o.

15

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 17 of 44 PageID #: 20

128.    For the foregoing reasons, Furnisher Defendants violated 15 U.S.C. § 1681s-2(b) and are liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to § 1681n and § 1681o.

### FOURTH COUNT
### CRA Defendants' Violations of the NY FCRA § 380

129.    Plaintiff repeats and realleges the foregoing paragraphs as if same were fully restated herein below.

130.    NY FCRA § 380-f(a) specifically provides that upon receipt of a consumer's dispute, a CRA promptly re-investigate and record the current status of such information and promptly notify the consumer of the result of its investigation, its decision on the status of the information and Plaintiff's rights pursuant to that section.

131.    In addition, NY FCRA § 380-f(b) specifically provides that when a "consumer reporting agency finds that an item is in error or that it can no longer be verified, it shall:

(1)    Promptly expunge the item and otherwise correct the file,

(2)    Refrain from reporting the item in subsequent consumer reports,

(3)    Clearly and conspicuously disclose to the consumer his rights to make a request for notification and upon request of the consumer, promptly notify any person designated by the consumer who has received information regarding the item during the previous year that an error existed and shall furnish such person with corrected information…"

132.    Here, a duty to conduct a reasonable investigation was triggered by CRA Defendants upon each receipt of any FCRA Dispute Letter referenced in the above statement of facts.

133.    CRA Defendants failed to conduct a reasonable investigation and failed to promptly correct the tradeline of the accounts at issue.

134.    CRA Defendants also failed to provide Plaintiff a notice of rights pursuant to NY FCRA § 380-f(b)(3).

135.    CRA Defendants' failure to adequately re-investigate these disputes despite being given the information constitutes a knowing or at a minimum a reckless disregard of their duties to Plaintiff.

16

136.    As such, CRA Defendants' violations were willful, rendering them liable for punitive damages in an amount to be determined by the court and attorney's fees pursuant to NY FCRA § 380-L.

137.    At a minimum, CRA Defendants' conduct was negligent in that they failed to use reasonable care and diligence in their obligations to the consumer rendering them liable for actual damages and attorney's fees pursuant to NY FCRA § 380-M.

138.    As a direct result of the above violations of the NY FCRA by CRA Defendants, Plaintiff suffered damages as described in the above statement of facts.

139.    As a result of the above violations of the NY FCRA, CRA Defendants are willfully and/or negligently liable to Plaintiff for actual damages, punitive damages, attorney's fees and costs pursuant to NY FCRA §§ 380-L and 380-M.

### JURY DEMAND

140.    Plaintiff hereby demands a trial of this action by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants, as follows:

a   Adjudging that Defendants' actions violated the FCRA;

b   Adjudging that CRA Defendants' actions violated the NY FCRA;

c   Enjoining Defendants from persisting in violative behaviors and requiring Defendants to correct or otherwise delete the accounts at issue in Plaintiff's credit report;

d   Granting Plaintiff actual damages against Defendants pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

e   Granting Plaintiff statutory damages against Defendants pursuant to 15 U.S.C. § 1681n(a)(1)(A);

f   Granting Plaintiff punitive damages against Defendants pursuant to 15 U.S.C. § 1681n(a)(2);

g   Granting Plaintiff costs and reasonable attorney's fees against the Defendants pursuant to 15 U.S.C. §§ 1681n(c) and 1681o(b);

17

Case 1:24-cv-02769   Document 1-1   Filed 04/12/24   Page 19 of 44 PageID #: 22

h   Granting Plaintiff actual damages, punitive damages, attorney's fees and costs pursuant to NY FCRA §§ 380-L and 380-M;

i   Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

j   Such other and further relief as the Court determines is just and proper.

DATED:    February 27, 2024
Uniondale, New York

**SANDERS LAW GROUP**

By: */s Nicola C. Richards*
Nicola C. Richards, Esq.
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: nrichards@sanderslaw.group
Office: (516) 203-7600
Direct: (516) 203-7614
Fax: (516) 282-7878
*Attorneys for Plaintiff*
Our File No.: 129435

18

☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Date of identifiable event 04/14/2022 | OMB No. 1545-1424 | |
|---|---|---|---|
| CITIBANK, N.A. 2 COURT SQUARE - 8TH FLOOR LONG ISLAND CITY, NY 11101 | 2 Amount of debt discharged $1,648.24 | Form **1099-C** (Rev. January 2022) | **Cancellation of Debt** |
| (800) 846-8444      INTERNAL RECOVERY | 3 Interest, if included in box 2 $ | For calendar year 20 **22** | |

| CREDITOR'S TIN | DEBTOR'S TIN | 4 Debt description CREDIT CARD LOAN | **Copy B For Debtor** |
|---|---|---|---|
| ▉▉▉ | ▉▉▉ | | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| DEBTOR'S name MATEUSZ M NOWAK | | 5 If checked, the debtor was personally liable for repayment of the debt . . . . . . . . . . . [X] | |
| ▉▉▉▉▉▉▉▉▉ | | | |

| Account number (see instructions) ▉▉▉▉ | 6 Identifiable event code G | 7 Fair market value of property $ | |
|---|---|---|---|

Form **1099-C** (Rev. 1-2022)     (keep for your records)     www.irs.gov/Form1099C     Department of the Treasury - Internal Revenue Service

CITIBANK, N.A.
PO BOX 790034
ST LOUIS, MO 63179

066570 CTTAX3D2 006570
MATEUSZ M NOWAK
▉▉▉▉▉▉



☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Date of identifiable event | OMB No. 1545-1424 | **Cancellation of Debt** |
|---|---|---|---|
| CITIBANK, N.A.<br>2 COURT SQUARE - 8TH FLOOR<br>LONG ISLAND CITY, NY 11101 | 04/04/2022 | Form **1099-C** | |
| | 2 Amount of debt discharged | | |
| | $11,960.93 | (Rev. January 2022) | |
| | 3 Interest, if included in box 2 | For calendar year | |
| (800) 846-8444      INTERNAL RECOVERY | $ | 20 **22** | |

| CREDITOR'S TIN | DEBTOR'S TIN | 4 Debt description | **Copy B** |
|---|---|---|---|
| ▉▉▉▉ | ▉▉▉▉ | **CREDIT CARD LOAN** | **For Debtor** |

DEBTOR'S name

**MATEUSZ NOWAK**

▉▉▉▉▉▉▉▉▉▉▉▉

ZIP or foreign postal code

5 If checked, the debtor was personally liable for repayment of the debt . . . . . . . . . . . [X]

This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

| Account number (see instructions) | 6 Identifiable event code | 7 Fair market value of property |
|---|---|---|
| ▉▉▉▉ | G | $ |

Form **1099-C** (Rev. 1-2022)      (keep for your records)      www.irs.gov/Form1099C      Department of the Treasury - Internal Revenue Service

CITIBANK, N.A.
PO BOX 790034
ST LOUIS, MO 63179

066572 CTTAX3D2 006572
MATEUSZ NOWAK
▉▉▉▉▉▉▉▉▉

□ CORRECTED (if checked)

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Date of identifiable event<br>04/04/2022 | OMB No. 1545-1424 | **Cancellation of Debt** |
|---|---|---|---|
| CITIBANK, N.A.<br>2 COURT SQUARE - 8TH FLOOR<br>LONG ISLAND CITY, NY 11101 | 2 Amount of debt discharged<br>$6,218.04 | Form **1099-C**<br>(Rev. January 2022) | |
| (800) 846-8444     **INTERNAL RECOVERY** | 3 Interest, if included in box 2<br>$ | For calendar year<br>20 **22** | |

| CREDITOR'S TIN | DEBTOR'S TIN | 4 Debt description<br>**CREDIT CARD LOAN** | **Copy B**<br>**For Debtor** |
|---|---|---|---|
| | | | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |

DEBTOR'S name
**MATEUSZ NOWAK**

| | 5 If checked, the debtor was personally liable for repayment of the debt . . . . . . . . . . [X] |
|---|---|
| ███████████ ZIP or foreign postal code | |

| Account number (see instructions) | 6 Identifiable event code<br>**G** | 7 Fair market value of property<br>$ |
|---|---|---|

Form **1099-C** (Rev. 1-2022)     (keep for your records)     www.irs.gov/Form1099C     Department of the Treasury - Internal Revenue Service

CITIBANK, N.A.
PO BOX 790034
ST LOUIS, MO 63179

066571 CTTAX3D2 006571
MATEUSZ NOWAK

## AFFIDAVIT OF SERVICE

| Case:<br>605052/2024 | Court:<br>Supreme Court Of the State Of New York, County of Suffolk | County:<br>County Of Suffolk | Job:<br>10526009 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Mateusz Nowak | | Defendant / Respondent:<br>Citibank, NA , et al. | |
| Received by:<br>South Dakota Professional Services LLC | | For:<br>Sanders Law Group | |
| To be served upon:<br>Citibank, NA | | | |

I, Valerie Dykes, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Citibank, NA , Company: 5800 South Corporate Place, Sioux Falls, SD 57108

**Manner of Service:**   Business, Feb 29, 2024, 1:18 pm CST

**Documents:**   Notice of Electronic Filing, Summons, Complaint, (Received Feb 29, 2024 at 11:00am CST)

**Additional Comments:**
1) Successful Attempt: Feb 29, 2024, 1:18 pm CST at Company: 5800 South Corporate Place, Sioux Falls, SD 57108 received by Kathy Person, legal department for Citibank, NA . Ms. Person stated she was authorized to accept service, and the normal person to do so on this day. Age: 50s; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'9"; Hair: Brown;

Valerie Dykes (Feb 29, 2024 15:53 CST)

_____   02/29/24
Valerie Dykes   **Date**

South Dakota Professional Services LLC
401 E 8th St Ste MR 515
Sioux Falls, SD 57103
605-368-1037

*Subscribed and sworn to before me by the affiant who is personally known to me.*

_____
**Notary Public**

2-29-24   6-6-25
**Date**   **Commission Expires**

This affidavit was signed by electronic signature at a remote location in Sioux Falls, SD. As the notary I have personal knowledge of the individual due to my relationship with him/her. I positively identified the person whose name is subscribed to the within instrument, appeared before me not in my physical presence but by means of video communication technology, and I observed his/her execution of the same for the purposes contained therein and confirm that I affix my seal to the same instrument so executed.



ERIC HURLBURT
NOTARY PUBLIC
SOUTH DAKOTA
SEAL   SEAL
My Commission Expires 6-6-25

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 24 of 44 PageID #: 27

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

| | |
|---|---|
| Mateusz Nowak, | |
| *Plaintiff,* | |
| v. | |
| Citibank, N.A., Discover Bank, Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union, LLC, | |
| *Defendants.* | |

Index No.: 605052/2024

**NOTICE OF APPEARANCE**

To the Clerk of this Court and all parties of record:

**PLEASE TAKE NOTICE**, that the undersigned, Craig B. Sanders, Esq. is an attorney admitted or otherwise authorized to practice in this Court and in good standing hereby enters her appearance as counsel for the Plaintiff Mateusz Nowak, in the above-captioned matter.

Dated: Uniondale, New York
      March 4, 2024

**SANDERS LAW GROUP**

By: */s/ Craig B. Sanders*
Craig B. Sanders, Esq.
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: csanders@sanderslaw.group
Office: (516) 203-7600
Fax: (516) 282-7878
Our File No.: 129435
*Attorneys for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

Mateusz Nowak,

*Plaintiff,*

v.

Citibank, N.A., Discover Bank, Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union, LLC,

*Defendants.*

Index No.: 605052/2024

**NOTICE OF APPEARANCE**

To the Clerk of this Court and all parties of record:

**PLEASE TAKE NOTICE**, that the undersigned, Alain Cesar, Esq. is an attorney admitted or otherwise authorized to practice in this Court and in good standing hereby enters her appearance as counsel for the Plaintiff Mateusz Nowak, in the above-captioned matter.

Dated: Uniondale, New York
        March 4, 2024

**SANDERS LAW GROUP**

By: */s/ Alain Cesar*
Alain Cesar, Esq.
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: acesar@sanderslaw.group
Office: (516) 203-7600
Fax: (516) 282-7878
Our File No.: 129435
*Attorneys for Plaintiff*

| STATE OF NEW YORK<br>SUPREME COURT | COUNTY OF SUFFOLK | Docket / Index # | 605052/2024 |
|---|---|---|---|
| | | Date Filed: | **February 27, 2024** |
| **Attorney(s):** SANDERS LAW GROUP  **Phone #** (516) 203-7600<br>**Address:** 333 Earle Ovington Blvd. Suite 402, Uniondale, NY 11553  **File #** 129435 | | PDY # | **PDY14020** |

MATEUSZ NOWAK

vs                                                                              *Plaintiff / Petitioner*

CITIBANK, N.A., ET AL.

*Defendant / Respondent*

STATE OF NEW YORK,  COUNTY OF NASSAU                                **AFFIDAVIT OF SERVICE**

<u>John Hudak</u>, being duly sworn deposes and says that deponent is not a party to this action, is over the age of 18 years and resides in the State of New Jersey. That on <u>March 15, 2024</u> at <u>12:05 PM</u>, at <u>C/O C T  CORPORATION SYSTEM - 28 LIBERTY STREET, New York, NY 10005</u>, deponent served the within

NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH SUPPORTING DOCUMENT(S)

on: <u>DISCOVER BANK</u>, <u>Defendant</u> therein named.
The index number and the filing date of the action were endorsed upon the face of the papers so served herein.

| | | |
|---|---|---|
| **#1**<br>Individual | ☐ | By delivering a true copy of each to said recipient personally; deponent knew the person served to be the person described as said person therein. |
| **#2**<br>Corporation | ☒ | By delivering thereat a true copy of each to _____CARLOS BOBE_____ personally, deponent knew the person so served to be the _____AUTHORIZED AGENT_____ of the corporation, and authorized to accept service on behalf of the corporation. |
| **#3**<br>Suitable Age Person | ☐ | By delivering a true copy of each to _____ a person of suitable age and discretion. Said premises is recipient's:  [ ☐ ] actual place of business         [ ☐ ] dwelling house (usual place of abode) within the state. |
| **#4**<br>Affixing To Door | ☐ | By affixing a true copy of each to the door of said premises, which is recipient's:  [ ☐ ] actual place of business    [ ☐ ] dwelling house (place of abode) within the state.<br><br>Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, having called thereat<br>on _____ at _____<br>on _____ at _____<br>on _____ at _____<br>on _____ at _____<br>Address confirmed by _____ |
| **#5**<br>Mail Copy | ☐ | On _____, deponent completed service by depositing a true copy of each document to the above address in a 1st Class postpaid properly addressed envelope marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office in the State of New York. The envelope did not indicate on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served. |
| **#6**<br>Description<br>(see With #1, 2 Or 3) | ☒ | A description of the Defendant, or other person served, or spoken to on behalf of the Defendant is as follows:<br>*Sex:* <u>Male</u>  *Color of Skin:* <u>Olive</u>  *Color of Hair:* <u>Brown</u>  *Age:* <u>45 - 50 YRS</u>  *Height:* <u>5' 9" - 5' 11"</u>  *Weight:* <u>200 - 240 LBS</u><br>*Other Features:* <u>HISPANIC</u> |
| **#7**<br>Wit. Fees | ☐ | _____ the authorized witness fee and / or traveling expenses were paid (tendered) to the recipient. |
| **#8**<br>Military Service | ☐ | _____ |
| **#9**<br>Other | ☐ | _____ |

Sworn to before me on:  3/18/24

_____
Victoria Acevedo
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01AC6363676
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES 08/28/2025

_____
John Hudak
Server's Lic # 1392295
Invoice / Work Order # W1036107

1 of 1

**STATE OF NEW YORK**  
**SUPREME COURT**

**COUNTY OF SUFFOLK**

| | |
|---|---|
| Docket / Index # | 605052/2024 |
| Date Filed: | **February 27, 2024** |
| PDY # | **PDY14020** |

**Attorney(s):** SANDERS LAW GROUP  **Phone #** (516) 203-7600  
 **Address:** 333 Earle Ovington Blvd. Suite 402, Uniondale, NY 11553  **File #** 129435

MATEUSZ NOWAK

VS

CITIBANK, N.A., ET AL.

*Plaintiff / Petitioner*

*Defendant / Respondent*

STATE OF NEW YORK,  COUNTY OF NASSAU

**AFFIDAVIT OF SERVICE**

John Hudak, being duly sworn deposes and says that deponent is not a party to this action, is over the age of 18 years and resides in the State of New Jersey. That on March 15, 2024 at 12:05 PM, at C/O C T CORPORATION SYSTEM - 28 LIBERTY STREET, New York, NY 10005, deponent served the within

NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH SUPPORTING DOCUMENT(S)

on: EXPERIAN INFORMATION SOLUTIONS, INC., Defendant therein named.

The index number and the filing date of the action were endorsed upon the face of the papers so served herein.

| | | |
|---|---|---|
| **#1**<br>Individual | ☐ | By delivering a true copy of each to said recipient personally; deponent knew the person served to be the person described as said person therein. |
| **#2**<br>Corporation | ☒ | By delivering thereat a true copy of each to _____ CARLOS BOBE _____ personally, deponent knew the person so served to be the _____ AUTHORIZED AGENT _____ of the corporation, and authorized to accept service on behalf of the corporation. |
| **#3**<br>Suitable Age Person | ☐ | By delivering a true copy of each to _____ a person of suitable age and discretion.<br>Said premises is recipient's:  [ ☐ ] actual place of business    [ ☐ ] dwelling house (usual place of abode) within the state. |
| **#4**<br>Affixing To Door | ☐ | By affixing a true copy of each to the door of said premises, which is recipient's:  [ ☐ ] actual place of business    [ ☐ ] dwelling house (place of abode) within the state.<br>Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, having called thereat<br>on _____ at _____<br>on _____ at _____<br>on _____ at _____<br>on _____ at _____<br>Address confirmed by _____ |
| **#5**<br>Mail Copy | ☐ | On _____, deponent completed service by depositing a true copy of each document to the above address in a 1st Class postpaid properly addressed envelope marked "Personal and Confidential" in an official depository under the exclusive care and custody of the United States Post Office in the State of New York. The envelope did not indicate on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served. |
| **#6**<br>Description<br>(see With #1, 2 Or 3) | ☒ | A description of the Defendant, or other person served, or spoken to on behalf of the Defendant is as follows:<br>*Sex:* Male  *Color of Skin:* Olive  *Color of Hair:* Brown  *Age:* 45 - 50 YRS.  *Height:* 5' 9" - 5' 11"  *Weight:* 200 - 240 LBS<br>*Other Features:* HISPANIC |
| **#7**<br>Wit. Fees | | _____ the authorized witness fee and / or traveling expenses were paid (tendered) to the recipient. |
| **#8**<br>Military Service | | |
| **#9**<br>Other | | |

Sworn to before me on: 3/18/24

_____  
Victoria Acevedo  
NOTARY PUBLIC, STATE OF NEW YORK  
NO. 01AC6363676  
QUALIFIED IN SUFFOLK COUNTY  
COMMISSION EXPIRES 08/28/2025

_____  
John Hudak  
Server's Lic # 1392295  
Invoice / Work Order # W1036108

Case 1:24-cv-02769   Document 1-1   Filed 04/12/24   Page 28 of 44 PageID #: 31

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

| | |
|---|---|
| Mateusz Nowak, | |
| Plaintiff, | |
| v. | Case No.: 605052/2024 |
| CITIBANK N.A., DISCOVER BANK, EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION, LLC, | |
| Defendants. | |

## STIPULATION TO BINDING ARBITRATION
## AND STAY OF PROCEEDINGS

Plaintiff Mateusz Nowak ("Plaintiff") and Defendant Citibank, N.A. ("Citibank") (collectively, the "Parties"), by and through their undersigned counsel, hereby stipulate and agree as follows:

1.  Plaintiff will submit his claims in this action against Citibank **only** to final and binding arbitration before the American Arbitration Association ("AAA"), as provided by the Card Agreement annexed hereto.

2.  Plaintiff shall initiate the arbitration after the Court's so-ordering this stipulation.

3.  Citibank's deadline to answer or otherwise respond to the Complaint is May 1, 2024, pursuant to a 30-day extension agreed by the Parties.  The Parties agree that Citibank need not file a responsive pleading in this action in light of the stay pending arbitration.

4.  Discovery between Plaintiff and Citibank in this Court shall be stayed pending arbitration.

5.  Judgment upon the award rendered in the arbitration may be entered in this Court.

DMFIRM #411790244 v1

**WHEREFORE**, the Parties respectfully request the Court so-order this stipulation and refer Plaintiff's claims against Citibank **only** to final and binding arbitration.

Dated: April 4, 2024

By: */s/ Nicola C. Richards*
Nicola C. Richards, Esq.
Sanders Law Group
333 Earle Ovington Boulevard, Suite 402
Uniondale, New York 11553
Email: nrichards@sanderslaw.group
Office: (516) 203-7600
Direct: (516) 203-7614
Fax: (516) 282-7878

*Counsel for Plaintiff*

By: */s/ Michael A. Hotz*
Jacquelyn N. Schell
Michael A. Hotz
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
Tel: (212) 223-0200
schellj@ballardspahr.com
hotzm@ballardspahr.com

*Counsel for Defendant Citibank, N.A.*

**SO ORDERED:**

_____

INDEX NO. 605052/2024

Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 30 of 44 PageID #: 33

RECEIVED NYSCEF: 04/04/2024

# EXHIBIT 1

Case 1:24-cv-02769   Document 1-1   Filed 04/12/24   Page 31 of 44 PageID #: 34

# Card Agreement Guide

This Guide will help you easily identify sections of the Card Agreement and give you a brief overview of the contents of each section. This is not intended to be a complete summary of the Card Agreement's contents, and we encourage you to read your entire Card Agreement, including the arbitration provision, before you use your Account.

**1 DEFINITIONS**
Lists the meanings of particular phrases and terms used in the Card Agreement.

**2 YOUR ACCOUNT**
Describes some of your responsibilities for using your Account.

**3 ANNUAL PERCENTAGE RATES & INTEREST CHARGES**
Shows how we calculate interest rates and how that affects your Account balance.

**4 FEES & FOREIGN CURRENCY CONVERSION**
Describes the fees that can be applied to your Account, including annual membership fees, returned payment fees, as well as foreign transaction fees for Purchases not in U.S. dollars.

**5 PAYMENTS**
Shows how your monthly Minimum Payment Due is calculated, tells you how we apply your payments to balances, and gives you certain instructions for making payments (and tells you the possible consequences of not following those instructions).

**6 AUTHORIZED USERS**
Describes an Authorized User's rights and your responsibility for that user. Also describes what information we can share about you and your Authorized User.

**7 DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT**
Tells you when we may require immediate payment of your total Account balance, and explains when we may close or suspend your Account, and when you may close your Account.

**8 CREDIT REPORTING**
Describes what information we provide about you to credit reporting agencies, and how to dispute items on your report. This section also explains how we use information we get about you from those agencies.

**9 ACCOUNT INFORMATION, INFORMATION SHARING & COMMUNICATIONS**
Explains that your personal information we use to manage your Account should always be up to date. Also notes that we share information about you and your Account. In addition, this section describes how we may contact you.

**10 TRANSACTIONS**
Provides important information about merchant credits, recurring Transactions and card refusals.

**11 ARBITRATION**
Explains that you cannot go to court, have a jury trial or initiate or participate in a class action if you have a dispute with us. Instead, this provision tells you that the dispute must be resolved by a professional arbitrator, not a judge or jury. This section also explains how arbitration works and some of the differences between resolving a dispute in arbitration and resolving one in court.

**12 AGREEMENT & BENEFIT CHANGES**
Explains that we can make changes to the Card Agreement and your card benefits and features.

**13 MISCELLANEOUS**
Explains subjects that aren't included in previous sections.

**14 YOUR BILLING RIGHTS**
Explains your billing rights, which include how to address possible statement mistakes and your rights if you're not satisfied with a Purchase.



# Card Agreement

This Card Agreement **(Agreement)** is your contract with us.

*The Facts about Interest and Fees* document **(Fact Sheet)** is part of this Agreement. The **Fact Sheet** shows important information about your Account, such as your annual percentage rates and certain fees. Any amendments to this Agreement also are part of this Agreement.

**Please read all parts of this Agreement, including the arbitration provision, and keep it for your records.**

*Note: Throughout the Agreement are examples, helpful tips and additional explanations that will make the Agreement easier to understand.*

# 1

## DEFINITIONS

**Account** – Your Citi Account.

**Adjusted New Balance** – Your New Balance less any Citi Flex Plan balance.

**Annual Percentage Rate (APR)** – A rate, shown as a percentage, used to calculate interest on the balance on your Account.

**Authorized User** – Any person you allow to use your Account with a Card we provided with that person's name.

**Balance Transfer** – Use of a Balance Transfer offer, including use of a check that accesses your Account for any transaction, or the transfer of a balance from another credit account to your Account.

**Billing Period** – The period of time between each date when we create a statement for your Account. A Billing Period is usually 28 – 33 days. For each Billing Period, your statement will show any Transactions, other charges, payments and other credits posted during that Billing Period.

**Business Day** – Monday through Friday, excluding federal holidays.

**Card** – One or more cards or other devices (including an account number) used to access your Account to obtain credit.

**Card Networks** – Organizations, such as Mastercard, Visa and American Express, that facilitate the payment process between a cardmember, merchants and a card issuer.

**Cash Advance** – Use of your Card to get cash, including foreign currency, or for what we consider a cash-like transaction. Examples include using your Card for: ATM and teller withdrawals, wire transfers, money orders, traveler's checks, lottery tickets, gaming chips and other methods used for gambling, wagers and other betting transactions. A Citi Flex Loan is not a Cash Advance.

**Citi Flex Loan** – Funds provided to you by check or by direct deposit that you select to be charged to your Account and repaid under a Citi Flex Plan. Balance Transfers and Cash Advances are not Citi Flex Loans.

**Citi Flex Pay** – Eligible Transactions that you select to be paid under a Citi Flex Plan.

**Citi Flex Plan** – A feature on your Account to pay Citi Flex Loans or Citi Flex Pay Amounts in a fixed number of payments.

**Consumer Reporting Agency** – An organization, such as Experian, Equifax and TransUnion, that compiles credit information for the purpose of generating consumer credit reports. It's also known as a "credit bureau" and a "credit reporting agency."

**Include and including** – These terms mean "include [or including] without limitation."

**New Balance** – The total amount you owe us at the end of each Billing Period. This amount is shown on each statement under the heading "New Balance." We explain how we calculate the New Balance below.

**Overlimit Amount** – The amount by which your Account balance exceeds your credit limit in any Billing Period.

**Purchase** – Use of your Card to buy goods and services. Balance Transfers and Cash Advances are not Purchases.

**Returned Payment** – A payment that isn't honored by your financial institution.

**Transaction** – A Balance Transfer, Cash Advance, Purchase or Citi Flex Plan, as applicable.

**we, us and our** – Citibank, N.A.

**you and your** – The cardmember who opened the Account.

*You'll find definitions of other terms within this Agreement.*



Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 33 of 44 PageID #: 36

# 2

## YOUR ACCOUNT

**Your Account use is subject to this Agreement. You must pay us for all amounts due on your Account, including:**

1. Transactions you make, even if you didn't present your Card or sign for the Transaction;

2. Transactions an Authorized User makes;

3. Transactions that other people make if you or an Authorized User let them use your Account; and

4. Any fees and interest charges on the Account.

**Binding Agreement.** This Agreement takes effect once you use your Card. Even if you don't use your Card, this Agreement will take effect unless you contact us to cancel your Account within 30 days after we sent you this Agreement.

**Credit Limit.** We assign a credit limit to your Account. Part of this credit limit may be available for Cash Advances, and there may be a limit on the amount of Cash Advances you can take in a given period. We may authorize Transactions that cause your balance to exceed your credit limit.

### ACCOUNT USE

**Consumer Purposes.** You aren't permitted to use your Account for business purposes. If you do use your Account for business purposes, this Agreement still applies, and you must pay us for those Transactions. You have to pay us for any damages and/or expenses resulting from that use. In addition, we may also close your Account.

**Citi Flex Plan.** Your ability to create a Citi Flex Plan will depend on the amount of your available credit, creditworthiness, and other factors. We may limit the number of active Citi Flex Plans you can have and we may change this number at any time. There are two ways to create a Citi Flex Plan – Citi Flex Pay and Citi Flex Loan.

With **Citi Flex Pay**, you can pay for eligible Transactions under a Citi Flex Plan. An eligible Transaction for Citi Flex Pay must be a Purchase of at least a specified dollar amount and does not include a Purchase of cash or cash equivalent, a Purchase subject to Foreign Transaction Fees or any fee owed to us. Other exclusions may apply.

With **Citi Flex Loan**, you can use your Account's credit line to access funds and pay such funds under a Citi Flex Plan. You can only create a Citi Flex Loan if you receive an offer. The offer will tell you the terms, including the APR, that will apply to that Citi Flex Loan.

**Unlawful Transactions.** You aren't permitted to use your Account for unlawful Transactions. If you do use your Account for unlawful Transactions, this Agreement still applies and you must pay us for those Transactions. You also may have to pay the Card Network and/or us for any damages and expenses resulting from that use. In addition, we may close your Account.

**Mobile Phone or Other Devices.** Smart phones, tablets and other electronic devices can store your Card (such as through a mobile wallet). This means they can be used to make Purchases or other Transactions. Any such Transactions are covered by this Agreement. Apps that use your Card to make Transactions may have separate terms of use. We're not responsible if you violate those terms, or for any consequences resulting from any violation.

*Note: It's important to protect your devices the same way you protect your Card.*
*Anyone who can access your Card using your device also can make charges to your Account using that device.*

# 3

## ANNUAL PERCENTAGE RATES & INTEREST CHARGES

**The following sections explain how we calculate the interest you owe each Billing Period.**

**APRs.** We use APRs to calculate interest charges on your Account. Different APRs may apply to different Transactions. See the listing of your APRs on the **Fact Sheet.**

**Variable APRs.** A variable APR is an APR that can change each Billing Period. We calculate each variable APR first by taking the U.S. Prime Rate from *The Wall Street Journal* (*WSJ*) two Business Days before the last day of each Billing Period. (If the *WSJ* doesn't publish the U.S. Prime Rate that day, then we'll use another publication.) Then we add to the U.S. Prime Rate a certain percentage amount, which we call the **Margin**. You can find the Margin we use for your Account in the Details About Your Interest Rate section of the **Fact Sheet.** Your variable APRs will increase if the U.S. Prime Rate increases and decrease if the U.S. Prime Rate decreases. If a variable APR increases, then your interest charges and Minimum Payment Due may increase.

**How is a variable APR calculated?**

If the U.S. Prime Rate published in the *WSJ* two Business Days before the end of a Billing Period is 5%; and
If the Margin is **13.99%**; then
Add the two together to calculate a variable APR:

5% + 13.99% = 18.99%

If the U.S. Prime Rate changes, we'll apply the new variable APR starting from the first day of the Billing Period when we take the U.S. Prime Rate from the *WSJ*. The new APR will apply to existing balances, as well as balances added to your Account after the change.



continued on next page

Section 2 — ANNUAL PERCENTAGE RATES & INTEREST CHARGES (continued) Filed 04/12/24 Page 34 of 44 PageID #: 37

**Daily Balance**

We calculate interest on your Account each Billing Period first by calculating your daily balances. The following explains how we do that.

**Here's how and when Transactions, fees and credits are applied to the balances on your Account:**

- We add the amount of a Purchase or Balance Transfer to the Purchase balance as of the post date on your statement.

- We add the amount of a Cash Advance to the Cash Advance balance as of the post date on your statement.

- We add a Balance Transfer fee to the Purchase balance as of the post date on your statement.

- We add the amount of any eligible Transaction under Citi Flex Pay or a Citi Flex Loan to a Citi Flex Plan balance as of the post date on your statement. If you moved an amount from another balance within your Account to a Citi Flex Plan, we will credit the other balance in the amount you added to a Citi Flex Plan in order to avoid double counting that amount. If a Plan Fee applies, the first Plan Fee will be added to the Citi Flex Balance as of the end of the billing period in which the Plan was created. A Plan Fee will then be added to the Citi Flex Plan balance at the end of each subsequent billing period until the Plan is paid in full.

- We add a Cash Advance fee to the Cash Advance balance as of the post date on your statement.

- We'll add any other fees to the balance of our choice. If you're charged interest in a Billing Period, but the amount calculated is less than $0.50, we'll add additional interest to the balance(s) of our choice so that you'll be charged $0.50 in interest for that Billing Period.

- We subtract credits and payments as of the post date shown on your statement.

- Each balance may have a different APR. Certain categories of Transactions in a balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer, or create a Citi Flex Plan, that's subject to a promotional APR. Your balances, and their corresponding APRs, are shown on your statement.

*Note: The post date shown on your statement will usually be the date of the Transaction, but it may be later.*

**Here's how we calculate each of the daily Purchase, Cash Advance and Citi Flex Plan balances on your Account:**

- We start with the daily balance from the end of the previous day.

- We add any new Transactions, fees and other charges, including interest accrued on the previous day's balance. This means that interest is compounded daily.

- We subtract any credits or payments credited as of that day.

- We make additional adjustments as appropriate, subject to applicable law (as an example, for a disputed charge). This gives us the daily balance for that day.

> Daily balance for purchases from the previous day
>     + New purchases
>     + Fees and interest accrued on the previous day's Purchase balance
>     – Payments, credits and adjustments posted that day
>
> **= New daily balance for Purchases**

**Interest Calculation.** Each daily balance may have a different APR. Certain categories of Transactions in a daily balance may have multiple APRs. For example, you may make a Purchase or Balance Transfer that's subject to a promotional APR. If a daily balance on your Account is subject to an APR, we'll charge interest on that daily balance. We use the daily balance method (which includes new Transactions). If interest applies to a balance, it will start applying on the day a charge is added to that balance and continue until that balance is paid in full. We consider a credit balance as a balance of zero when calculating interest on that balance.

- We multiply each daily balance by its applicable daily periodic rates (each applicable APR divided by 365).

- We do this for each day in the Billing Period. This gives us the daily interest amounts.

- Then we total all the daily interest amounts for all the daily balances. This gives us the total interest for the Billing Period.

*Note: Your balances, and their corresponding APRs, are shown on your statement.*

**Calculating the New Balance.** To calculate the New Balance at the end of each Billing Period, we begin with the total Account balance at the start of that Billing Period. Then we add any Transactions that are new to the Account during that Billing Period. Then we subtract any credits applied or payments made during that Billing Period. Then we add any interest charges or fees incurred during that Billing Period and make any other adjustments, as applicable (for example, if you have disputed a charge).

**Grace Period on Purchases.** You won't pay any interest on Purchases if you pay the Adjusted New Balance, including any Balance Transfers, plus any Citi Flex Plan Payment Amount, in full by the payment due date shown on your statement each Billing Period. We call this a **grace period on purchases.** If you don't pay your Adjusted New Balance in full, plus any Citi Flex Plan Payment Amount, by the payment due date in a Billing Period, you'll pay interest on your Purchases from the date they're posted to your Account. You also won't have a grace period on Purchases again until you pay the Adjusted New Balance in full, plus any Citi Flex Plan Payment Amount, by the payment due date 2 Billing Periods in a row.

There's no grace period on Balance Transfers, Cash Advances, and Citi Flex Loans. This means you'll pay interest on Balance Transfers, Cash Advances, and Citi Flex Loans from the date these Transactions post to your Account.

*Important Information about Citi Flex Plans: We apply any amount you pay over your Minimum Payment Due first to the balance with the highest APR, then to the balance with the next highest APR, and so on, as described in Section 5, Application of Payments. This means that, if the APR for a Citi Flex Plan balance is higher than an APR that applies to another balance on your Account, we will apply the amount you pay above the Minimum Payment Due to that Citi Flex Plan balance prior to that other balance. This will cause you to pay off that Citi Flex Plan balance before the end of its repayment period and may result in an amount remaining due on your next billing statement for the other balance, increasing your Adjusted New Balance on your next billing statement.*

*You can see your balances and their corresponding APRs on your statement.*



continued on next page

3

FILED: SUFFOLK COUNTY CLERK 04/12/24    Page 35 of 44 PageID #: 38

**Grace Period for Citi Flex Plan balances.** When you create a Citi Flex Pay subject to an APR, you will be charged interest on the Citi Flex Pay balance from the start of the Billing Period following the Billing Period when you created the Citi Flex Pay.  This means that you will not be charged interest on the Citi Flex Pay balance during the billing Period in which you created the Citi Flex Pay.

There is no grace period for Citi Flex Loans. You'll pay interest on Citi Flex Loans from the date the Loan is posted to your account.

# 4

## FEES & FOREIGN CURRENCY CONVERSION

### FEES

| Fee | Amount | About the Fee |
|---|---|---|
| Annual Membership Fee | See Pricing Table | If your Account has an annual membership fee, the Fact Sheet shows this fee. You'll see this annual fee on your first statement after opening your Account and each year after that. We'll charge the fee if your Account is open, even if you don't have a balance. |
| Returned Payment Fee | Up to $41 | We have the right to charge you a Returned Payment fee of $30 if your bank doesn't honor your payment. If that happens, we'll resubmit the payment request. If your bank doesn't honor another payment within 6 consecutive Billing Periods, the returned payment fee will go up to $41. |
| Transaction Fee for Balance Transfers | Either $5 or 5% of the amount of each transfer, whichever is greater. | We charge you a fee for each Balance Transfer. |
| Transaction Fee for Cash Advances | Either $10 or 5% of the amount of each cash advance, whichever is greater. | We charge you a fee for each Cash Advance. |
| Transaction Fee for Purchases in Foreign Currency | 3% of the amount of the Transaction after conversion to U.S. dollars. | We charge you a fee for a Purchase made in a currency other than U.S. dollars regardless of where the Transaction takes place or who the merchant is. |
| Plan Fee (Fixed Finance Charge) | A monthly fee of up to **1.72%** of each Transaction moved to a Plan based on the Plan duration, the APR that would otherwise apply to the Transaction and other factors. | If a Plan Fee applies, it will be disclosed to you at the time you enter into the Citi Flex Plan. |

### FOREIGN CURRENCY CONVERSION

**Foreign Currency Conversion – Purchases.** A Card Network converts the amount of a Purchase in a foreign currency into U.S. dollars. Each Card Network follows its own procedures for conversion. These procedures include how the Card Network chooses an exchange rate and when to do the conversion. For example, Visa chooses either a government-mandated exchange rate or chooses from a range of rates available on wholesale currency markets (and, in either case, the exchange rate that it chooses may be less favorable than the rate that Visa itself, receives when it makes foreign currency transactions). Depending on the policies of each Card Network, the exchange rate chosen may be the one in effect on the day that the Card Network does the conversion, or on the day before. The exchange rate that a Card Network uses to convert the Purchase to U.S. dollars may differ from the rate in effect on the date you made the Purchase or on the post date for that Purchase shown on your statement. The Card Network's procedures may change without notice.

If a third party, such as a merchant, converts the amount of a Purchase into U.S. dollars before sending the Purchase to a Card Network, the third party chooses the conversion rate instead of the Card Network.

**Foreign Currency Conversion – Cash Advances.** If you take a Cash Advance in a foreign currency at an ATM or branch of a financial institution, it may not be the Card Network in all instances that converts the Transaction into U.S. dollars. Instead, depending on where the Transaction takes place, another third party, such as a financial institution, ATM network or ATM operator, may do the conversion. We do not control this. However, if you use your Card for a Cash Advance at a Citibank ATM or branch, then we or our affiliates may do the conversion.

The party that converts a Cash Advance to U.S. dollars will choose the exchange rate and when to do the conversion. The exchange rate in effect on the date the Cash Advance is converted to U.S. dollars may differ from the rate in effect on the date you took the Cash Advance or the post date for that Transaction shown on your statement. The exchange rate may also differ from any rate quoted to you when you made the Transaction.



Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 36 of 44 PageID #: 39

# 5

## PAYMENTS

**Minimum Payment Due.** You may pay all or a part of your Account balance at any time. You must pay at least the Minimum Payment Due by the payment due date each Billing Period.

Your **"Minimum Payment Due"** equals:

- Any amount past due; plus
- Any Overlimit Amount; plus
- Any Citi Flex Plan Payment Amount; plus
- The greater of:
    1. The Adjusted New Balance, if it's less than $20; or
    2. $20 if the Adjusted New Balance is at least $20;
    3. 1% of the Adjusted New Balance (rounded to the nearest dollar), plus any billed interest or minimum interest charge.

The Minimum Payment Due is never more than the New Balance.

*Note: Your payment due date is typically the same day of the month, every month. You may request a change to your monthly due date.*

**Citi Flex Plan Payment Amount.** The Minimum Payment Due will include any amount due on a Citi Flex Plan balance each Billing Period (the "**Citi Flex Plan Payment Amount**"). Your first Citi Flex Plan Payment Amount will be due in the Billing Period following the Billing Period in which you created the Citi Flex Plan. You must pay the Citi Flex Plan Payment Amount each Billing Period, calculated as described below, for so long as any balance remains in the Citi Flex Plan. The Citi Flex Plan Payment will never be more than the amount of the Citi Flex Plan balance, which includes any applicable interest or Plan Fee.

**For Citi Flex Plans Subject to a Citi Flex Plan APR:**

- We take the Citi Flex Plan balance as of the date it is created, plus
- The estimated interest charges for the Citi Flex Plan calculated through the end of the Citi Flex Plan repayment period, the sum of which is divided by the number of months in the Citi Flex Plan.
    ○ Estimated interest charges for the Citi Flex Plan are calculated as follows: (i) for Citi Flex Pay, the estimated interest charges are calculated on the daily balance from the start of the next Billing Period following the Billing Period on which you created the Citi Flex Pay; and (ii) for Citi Flex Loan, the estimated interest charges are calculated on the daily balance from the date on which you created the Citi Flex Loan. For purposes of this estimate, interest is calculated through the end of the Citi Flex Plan repayment period.

The formula we use for determining the amount described directly above is:
- $B \times (IPAPR/12) / (1-(1+IPAPR/12)^{-N})$
    ○ Where B is the Citi Flex Plan balance plus, for Citi Flex Loan, interest accrued in the billing period in which the Citi Flex Loan was created, calculated as the initial Flex Loan balance multiplied by $(1+APR/365)^D$
        ▪ APR is the APR that applies to that specific Citi Flex Plan
        ▪ D is the estimated number of days remaining in the billing period after the Citi Flex Loan is posted to the account
    ○ IPAPR is $12 \times ((1+APR/365)^{(365/12)}-1)$
- N is the number of scheduled payments to be made during the Citi Flex Plan repayment period

**For Citi Flex Plans subject to a Plan Fee:**

- We start by dividing the initial Citi Flex Plan balance by the selected repayment period.
- We then add your monthly Plan Fee to determine the monthly payment amount.

Your first Citi Flex Plan Payment Amount will be due in the Billing Period following the Billing Period in which you created the Citi Flex Plan. The actual interest charged on your Citi Flex Plan will be calculated as described in Section 3. If you do not pay your Minimum Payment Due in full by the due date, you may owe additional interest on your Citi Flex Plan balance if it is subject to a Citi Flex Plan APR. This will not increase the Citi Flex Plan Payment Amount for subsequent Billing Periods, but you may be required to make additional payments after the end of the Citi Flex Plan repayment period to pay your Citi Flex Plan balance (including any additional interest) in full.

If you have not paid your Minimum Payment Due for any three Billing Periods during the Citi Flex Plan, and the Minimum Payment Due for those three Billing Periods remains outstanding at the end of your current Billing Period, we may cancel any existing Citi Flex Plan from your Account, then add the balance of any canceled Citi Flex Plan to the Purchase balance, retaining the Citi Flex Plan APR that was in effect at time of cancelation. If we cancel a Citi Flex Plan subject to a Plan Fee, we will not charge the Plan Fee after cancelation.

We may also do this if:

- You file for bankruptcy or some other insolvency proceeding is filed by or against you.
- You don't honor the terms of this Agreement.
- You're declared incompetent or mentally incapacitated or in the event of your death.
- You enter into a hardship assistance program.

If any of the above events occur, we will calculate the Minimum Payment Due as part of the Adjusted New Balance as described in Section 5 and you will no longer pay a monthly Citi Flex Plan Payment Amount. Any canceled Citi Flex Plan balance amount that was added to a Purchase balance will not be added back to a Citi Flex Plan balance, even if you pay your outstanding Minimum Payment Due in full. You will not be eligible to create another Citi Flex Plan until you pay your outstanding Minimum Payment Due in full, and then only if we offer you the opportunity to create another Citi Flex Plan.

***Important Information about Citi Flex Plans and Promotional APRs:*** *If your Citi Flex Plan APR is higher than any other APR, such as a promotional Balance Transfer APR, we will apply any payment you make above the Minimum Payment Due to that Citi Flex Plan balance prior to the lower APR balances.* ***This means that if you want to pay off a balance with a lower promotional APR before the promotional period expires, you must first pay off all your other balances with higher APRs, including your Citi Flex Plan balance, before you can pay off that promotional balance.***

**Application of Payments.** We decide how to apply your payment, up to the Minimum Payment Due, to the balances on your Account. We may apply the Minimum Payment Due first to interest charges, then to the balance with the lowest APR and then to balances with higher APRs. If

continued on next page



5

Case 2:24-cv-02769 Document 1-1 Filed 04/12/24 Page 37 of 44 PageID #: 40

Section 5 – PAYMENTS (continued)

you pay more than the Minimum Payment Due, we'll apply the amount over the Minimum Payment Due first to the balance with the highest APR, then to the balance with the next highest APR, and so on, except as otherwise required by applicable law.

**Payment Instructions.** You must follow the instructions below when making a payment. If you do, we'll credit the payment to your Account as of the day we receive it.

1. You must pay in U.S. dollars.

2. You must use a check or electronic debit issued by a bank in the United States.

3. You must not send us a check dated after the date that we receive it.

4. You must not enclose more than one check per envelope.

5. You must not include any restrictive endorsements on the check.

6. You must follow the additional payment instructions shown on your statement.

If you don't pay in U.S. dollars and we accept your payment, we'll select the currency conversion rate, and you must pay our costs. If you don't follow our payment instructions, we may not accept your payment, or there may be a delay in crediting your Account. Either case may result in late fees and additional interest charges to your Account. If you don't follow the instructions in this Agreement or on your statement, we may accept your payment without losing our rights. We may reject a payment if it's more than the outstanding Account balance. We also may close your Account.



# 6

## AUTHORIZED USERS

**Account Use by Authorized Users.** You can ask us to add one or more Authorized Users to your Account. If we approve, use of your Account by an Authorized User is subject to the terms of this Agreement. You must:

- Obtain permission from each Authorized User before naming him or her as an Authorized User on your Account.

- Make a copy of this Agreement available to each Authorized User.

- Pay us for all charges incurred by each Authorized User.

- Notify us to remove an Authorized User from your Account.

If we remove an Authorized User, in some cases we may close your Account, open a new Account and issue you a new Card.

You're responsible for:

- Any Transactions made by an Authorized User on your Account.

- Any Transaction made by an Authorized User even if the post date shown on your statement for that Transaction occurs after the date you ask us to remove the Authorized User from your Account.

- Any Transactions made by others if an Authorized User allows them to use your Account.

- Fees and charges resulting from any Transactions made by an Authorized User or others if an Authorized User allows them to use your Account.

**Account Information Rights for Authorized Users.** You allow us to discuss your Account with an Authorized User. This includes giving him or her access to your Account information and history. You also agree that an Authorized User may use and receive information about the Account the same way you do. An Authorized User can't add other Authorized Users, adjust the credit limit or close the Account.

**What can Authorized Users do?**

- *Report lost or stolen Cards*

- *Request statement copies*

- *Initiate billing disputes*

- *Make payments*

- *Change the billing address for your Account*

- *Request refund checks*

- *Obtain Account information such as Transaction histories*

**Information about Authorized Users.** You agree to give us certain personal information about each Authorized User. You must let each one know that you'll give us that information and you must have his or her permission to do so. You must have permission from each one to allow us to share information about him or her as allowed by applicable law. This includes information we may get from you, any Authorized User and others. It also includes information about their Transactions on the Account.

**Credit Reporting.** We report information about this Account to Consumer Reporting Agencies in the Authorized User's name that may appear on their credit report. This could include information about:

- Late Payments;

- Overlimit Amounts;

- Returned Payments; and

- Other violations of this Agreement.

You must let each Authorized User know that we report Account information in his or her name. Also, see **Credit Reporting** in Section 8.



Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 38 of 44 PageID #: 41

# 7

## DEFAULT, CLOSING OR SUSPENDING YOUR ACCOUNT

**Default.** We may require immediate payment of your total Account balance, to the extent allowed by law, if any of the following occur:

1. You don't pay at least the Minimum Payment Due by the due date.

2. You have a Returned Payment.

3. You file for bankruptcy or some other insolvency proceeding is filed by or against you.

4. You don't honor the terms of this Agreement.

5. You default under any other card agreement you have with us.

6. You're declared incompetent or mentally incapacitated, or in the event of your death.

**Closing or Suspending Your Account.** We may close or suspend your Account if any of the events listed above occur, or for any reason, or for no reason. We may do this at any time, without notifying you, as allowed by law. We may cancel your current Card and issue you a substitute Card at any time. You also may close your Account at any time by notifying us by telephone or in writing. If we close or suspend your Account, or if you close your Account, you must pay us all amounts you owe on the Account (including any amount due on a Citi Flex Plan balance), even if they post to your Account after it's closed or suspended.

**Closing Secured Accounts.** If your Account is a secured Account, you gave us a security interest in a deposit account. This secures repayment of your Account. If you withdraw your funds from the deposit account, we will close your Account. If you gave us a security interest in a deposit account, we may use the deposit amount to pay any amount you owe.

# 8

## CREDIT REPORTING

You allow us to get information about you. We get it from Consumer Reporting Agencies and other sources that provide consumer financial information. You allow us to use it for:

• Renewal of your Account;

• Credit line increases or decreases;

• Administration or review of your Account, collection and any other servicing;

• All other credit-related purposes connected with this Agreement;

• Offers for other cards, insurance products and other services; and

• Other uses permitted by law.

We report Account information in your name, as well as information about you to Consumer Reporting Agencies, on a monthly basis.

The information we provide may appear on your credit reports. This can include information about:

• Late Payments;

• Overlimit Amounts;

• Returned Payments; and

• Other violations of this Agreement.

If you think we've given incorrect information to a Consumer Reporting Agency about you (or about an Authorized User), please write to us at the Customer Service address on your statement and we'll research it. We'll let you know if we agree or disagree with you. If we agree with you, we'll contact each Consumer Reporting Agency we reported to and request a correction.

# 9

## ACCOUNT INFORMATION, INFORMATION SHARING & COMMUNICATIONS

**Changes to Account Information.** You provided certain personal information to us when you opened your Account. You agree to notify us if this information changes. If you don't, or if we ask you to verify your Account information and you cannot, we may suspend or close your Account.

**Information Sharing.** You agree to let us share information about you and your Account as allowed by law. This includes information we get from you and others. Our privacy notice, which is enclosed with your new Account materials, describes reasons Citi can share its customers' personal information.

**COMMUNICATIONS**

**Contacting You.** You agree that we (and/or our service providers or anyone we authorize) may contact you at any phone number, email address or mailing address you provide or we obtain in other ways.

This includes communications to mobile, cellular/wireless or similar devices. We may contact you by live operator, auto-dialer, recorded or artificial voice, text or email.

You agree to pay any charges from your plan provider for communications we send to you, as well as communications you send to us.

**How We Capture and Use Voiceprints.** We may use voice recognition technology to verify your identity when you call. We may capture and store your voiceprint for this purpose.

**Call Monitoring.** We may monitor and record any calls between you and us.

**Notices.** We send any notices to your billing address or, if you've agreed, by email to the address you gave us. We consider a notice sent as soon as we mail it. We consider an electronic notice sent as soon as we email it, unless we receive notification that the email was undeliverable.



Case 1:24-cv-02769 Document 1-1 Filed 04/12/24 Page 39 of 44 PageID #: 42

# 10

## TRANSACTIONS

**Merchant Refunds.** A merchant refund to your Account will post to your Account as a credit. We don't control when a merchant sends an Account credit. We'll choose how to apply the credit to your existing Account balances, including whether to apply a credit to a Citi Flex Plan or a different balance. If you believe a merchant credit has not been applied properly, please contact us. If a credit creates a credit balance on your Account, we'll mail you a check for the amount of the credit balance.

*Note: Merchant Surcharges. Some merchants, including merchants outside the U.S., may charge you a fee to use your Card for a Purchase. The fee will be either a percentage of the amount of your Purchase, or a flat fee, and will be added to the amount of your Purchase. Usually, a merchant will tell you about this fee before you use your Card, but not always. We don't control these fees, and can't prevent them.*

**Recurring Authorized Transactions.** If you authorize a merchant or any other person to charge your Account for recurring Transactions, you must notify the merchant if:

- You want to discontinue these Transactions;
- Your Account is closed;
- Your Account number changes;
- Your Card expiration date changes.

You're responsible for reinstating any recurring authorized Transactions.

**Refusal of the Card.** We don't guarantee approval of Transactions. We are not liable for those that aren't approved, even if you have enough available credit on your Account. If we detect unusual or suspicious activity, we may suspend your credit privileges. We also may limit the number of Transactions approved in a single day.

# 11

## ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury. Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

**Covered claims**

- **You or we may arbitrate** any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, Authorized User, employee, agent, representative or an affiliated/parent/subsidiary company.

**Arbitration limits**

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim

against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, Authorized Users on a single Account and/or related Accounts or corporate affiliates are here considered as one person.

**How arbitration works**

- Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the claim is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. You can obtain copies of the AAA Rules at the AAA's website (www.adr.org) or by calling 800-778-7879 (For TTY: Use 711 or other Relay Service). You or we may choose to have a hearing, appear at any hearing by phone or other electronic means, and/or be represented by counsel. Any in-person hearing will be held in the same city as the U.S. District Court closest to your billing address.

- Arbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

- The arbitration shall be conducted by a single arbitrator in accord with this arbitration provision and the AAA Rules, which may limit discovery.

continued on next page



SECTION 11 — ARBITRATION (Continued)

The arbitrator shall not apply any federal or state rules of civil procedure for discovery, but the arbitrator shall honor claims of privilege recognized at law and shall take reasonable steps to protect Account information and other confidential information of either party if requested to do so. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statute of limitations, and may award damages or other relief under applicable law.

- The arbitrator shall make any award in writing and, if requested by you or us, may provide a brief statement of the reasons for the award. An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

**Paying for arbitration fees**

- We'll pay your share of the arbitration fee for an arbitration of Claims of $75,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Claim was frivolous. All parties are responsible for their own attorney's fees, expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law.

**The final award**

- Any award by an arbitrator is final unless a party appeals it in writing to the AAA within 30 days of notice of the award. The arbitration appeal shall be determined by a panel of 3 arbitrators. The panel will consider all facts and legal issues anew based on the same evidence presented in the prior arbitration, and will make decisions based on a majority vote. Arbitration fees for the arbitration appeal shall be allocated

according to the applicable AAA Rules. An award by a panel on appeal is final. A final award is subject to judicial review as provided by applicable law.

**Survival and Severability of Terms**

This arbitration provision shall survive changes in this Agreement and termination of the Account or the relationship between you and us, including the bankruptcy of any party and any sale of your Account, or amounts owed on your Account, to another person or entity. If any part of this arbitration provision is deemed invalid or unenforceable, the other terms shall remain in force, except that there can be no arbitration of a class or representative Claim. This arbitration provision may not be amended, severed or waived, except as provided in this Agreement or in a written agreement between you and us.

**Rules for rejecting this arbitration provision**

You may reject this arbitration provision by sending a written rejection notice to us at PO Box 6195; Sioux Falls, SD 57117-6195. Your rejection notice must be mailed within 45 days of Account opening. Your rejection notice must state that you reject the arbitration provision and include your name, address, Account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the Account.

# 12

## AGREEMENT & BENEFIT CHANGES

**Changes to this Agreement.** We may change this Agreement for any reason and at any time, subject to applicable law. This means that we can change rates and fees that apply to your Account. It also means we can add, replace or remove provisions of this Agreement. If required by applicable law, we'll give you notice of the changes. If you have the right to reject a change, we'll notify you and tell you

how to reject. If we notify you of a change, we may do so on your statement or send you a separate written notice, either of which may be sent electronically if permitted by applicable law.

**Changing Benefits.** Any benefit, reward, service or feature offered may change or be discontinued at any time for any reason. Separate terms and conditions will describe any exceptions.

Case 1:24-cv-02769   Document 1-1   Filed 04/12/24   Page 41 of 44 PageID #: 44

# 13

## MISCELLANEOUS

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party. You may not sell, assign or transfer your Account or any of your obligations under this Agreement.

**Governing Law.** Federal law and the law of South Dakota govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We won't lose our rights under this Agreement because we delay in enforcing them or fail to enforce them. If any provision of this Agreement is found to be unenforceable, all other provisions of the Agreement will remain in effect.

**Collection Costs.** To the extent allowed by law, you're liable to us for our legal costs if we refer collection of your Account to a lawyer who isn't our salaried employee. These costs may include reasonable attorneys' fees, as well as costs and expenses of any legal action.

**Unforeseen Circumstances.** From time to time, our services might be unavailable due to circumstances beyond our control (such as fires, floods, natural disasters, system failures or other unpredictable events). When this happens, you might not be able to use your Card or obtain information about your Account. We're not responsible or liable if this happens.

**Lost or Stolen Cards, Account Numbers or Account Checks.** You must try to prevent the unauthorized use of your Account and any Card, including your Account number. You must call us if any Card is lost or stolen. Also, you must call us if you think someone has used or may use these items without permission.

**Headings.** The headings in this Agreement are included as a matter of convenience and don't define, limit or enlarge the scope of this Agreement or any of its provisions.

**Correction of Errors.** If we incorrectly apply a payment or credit to your Account, make an incorrect payment or transfer of funds to you or an Authorized User or anyone else on your behalf or on behalf of an Authorized User, or make any other error regarding your Account, you agree that we may correct the error. We may correct the error by making adjustments to your Account, requiring you to repay us for any incorrect payments, credits or transfers, or taking other actions we determine are appropriate to correct the error. You agree to cooperate with us to correct any of these errors.

# 14

## YOUR BILLING RIGHTS

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act. Keep this document for future use.**

**What to Do if You Find a Mistake on Your Statement**

If you think there is an error on your statement, write to us at the address for billing inquiries and correspondence shown on the front of your statement.

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do 2 things:

1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.

2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

**While we investigate whether or not there has been an error:**

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The transaction in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

We can apply any unpaid amount against your credit limit.

**After we finish our investigation, one of two things will happen:**

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.



continued on next page

Case 2:24-cv-02616 Document 1-1 Filed 04/12/24 Page 42 of 44 PageID #: 45

**SECTION 14 — YOUR BILLING RIGHTS (continued)**

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights if You're Dissatisfied with Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

**To use this right, all of the following must be true:**

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (**Note:** Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with an Account check do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at the address for billing inquiries and correspondence shown on the front of your statement.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**For Further Information:** Call the Customer Service number shown on the statement or on the back of your Card if you need more information. For TTY: Use 711 or other Relay Service.



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-------------------------------------------------- X

Mateusz Nowak,                                         :

                                      :

              Plaintiff,                         :

       -against-                               :

                                        :

Citibank, N.A., Discover Bank, Experian            :
Information Solutions, Inc., Equifax               :
Information Services, LLC, and Trans Union,        :
LLC,                                               :

              Defendants.                        X

-------------------------------------------------- 

Case No. 605052/2024

**STIPULATION EXTENDING TIME
TO RESPOND TO COMPLAINT**

      IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that

the deadline for Defendant Discover Bank to answer, move, or otherwise plead in response to

Plaintiff's Complaint shall be April 22, 2024.

      IT IS FURTHER STIPULATED AND AGREED, facsimile or electronic copies of this

Stipulation and the signatures contained hereon shall be deemed to be originals for this purpose

only.

Dated:  April 5, 2024

SANDERS LAW GROUP

By: */s/ Nicola C. Richards*
Nicola C. Richards, Esq.
Sanders Law Group
333 Earle Ovington Boulevard, Suite 402
Uniondale, NY 11553
(516) 203-7614
nrichards@sanderslaw.group

*Attorneys for Plaintiff*

MORGAN, LEWIS & BOCKIUS LLP

By: *Sarah M. Bouskila*
Sarah M. Bouskila
101 Park Avenue
New York, New York 10138
(212) 309-6175
sarah.bouskila@morganlewis.com

*Attorneys for Defendant,
Discover Bank*

Case 1:24-cv-02769   Document 1-1   Filed 04/12/24   Page 44 of 44 PageID #: 47

DB2/ 47858388.1

2